### RAUSCH et ux. v. CONE et al.

#### (District Court, S. D. Florida. April 3, 1922.)

#### No. 81.

Mortgages ⚖➟38(1)—Evidence held insufficient to show that deed was Intended as mortgage.

 Evidence *held* insufficient to sustain the burden resting on complainants of proving that a quitclaim deed executed by them, absolute on its face, was given as security, and under the state statute did not convey title.

In Equity. Suit by Charles E. Rausch and Minnie E. Rausch against E. E. Cone and others. Decree for defendants.

Marks, Marks & Holt, of Jacksonville, Fla., for complainants.
Mabry, Reaves & Carlton, of Tampa, Fla., for defendants.

CALL, District Judge. The bill of complaint herein, filed October 12, 1921, charges: That Minnie E. Rausch, one of the complainants, was on June 27, 1917, the owner in fee simple of a certain piece of real estate situated in the city of Tampa, Fla., subject to a certain mortgage to one Hobbs for the sum of $11,200. That said mortgage had become in default and foreclosure proceedings commenced, which resulted in a decree of foreclosure. The title was deraigned through the defendant Cone through mesne conveyances to said complainant, subject to said Hobbs mortgage, the payment of which was assumed by the said Rausch. That upon commencement of said foreclosure proceedings Cone approached the complainants about taking care of said mortgage. Whereupon certain consultations were had between them, looking to the preservation of the equity of complainants in the property, which resulted in an agreement being reached between them whereby Cone was to take a certain $4,000 mortgage owned by Mrs.

Rausch, and sell or take the same himself at a discount of 10 per cent., the proceeds to be employed in reduction of the decree, and a new mortgage given by Cone covering the property for the reduced amount. In order to effectuate this agreement, the property was deeded by complainants to Cone, and after that the new mortgage was given by Cone; the property was to be deeded by Cone to the complainant, Minnie A. Rausch, subject to said new mortgage. That said new mortgage was given, and the deed from Cone to complainant was executed and placed in the hands of defendant Mabry for delivery to complainant. That, feeling that said deed was entirely safe in the hands of Mabry, no demand was made for such delivery at the consummation of the understanding in the matter of the decree of foreclosure. That, as the result of further negotiations between complainants and defendant Cone, Cone agreed to have put in the building a concrete floor, take care of the installments of interest as they became due, as well as the taxes, etc., and retain possession of the premises, and rent same at a rental of $125 per month until he should be reimbursed for his expenditures. That about April 1, 1918, complainants procured Cone to go on a supersedeas bond for them in another suit, and to secure him against loss by reason of going on said supersedeas bond the property in controversy in said last-named suit was deeded to Cone, he to be allowed to retain possession of the first-named property, and that defendant Mabry should be allowed to retain possession of the deed from Cone to complainant Minnie A. Rausch, and that complainants at the request of Cone executed a quitclaim deed to the first-mentioned property to Cone, and left same in possession of said Mabry in escrow. That it was specifically agreed between the parties that, as soon as the liability of Cone on said supersedeas bond was terminated, said quitclaim deed should be delivered by Mabry to complainants. That said litigation in which the supersedeas bond was given was settled shortly thereafter and said litigation terminated without loss to Cone, and the second-mentioned property conveyed, and that matter entirely closed. That complainants had removed their residence from Tampa and through loss of papers sent by mail to an attorney in Tampa, causing a delay of 17 months before demand was made upon said Mabry by an attorney in Tampa, and in the month of November, 1920, the defendant Mabry took the position that he had never received any deed from complainants to be held in trust or escrow. That in December, 1920, defendant Cone, upon demand for an accounting of the rents, etc., of the first-mentioned property, took the position that he owned the first-mentioned property and was not required to account, and had never executed a deed reconveying said property to complainant after negotiating the new Hobbs mortgage. The bill then alleges the value of the property and its rental value, and prays for an accounting against Cone, a reconveyance of the property, and, if that was impossible, then a money decree against Cone and Mabry for the amount of damage sustained.

To this bill the defendants filed separate answers. Mabry's answer admits title of complainant Minnie A. Rausch, subject to a mortgage as alleged in the bill. He admits the foreclosure of said mortgage, and alleges the entry of decree in said foreclosure suit for a sum approxi-

mating $13,000, which the complainants and defendant Cone were required to pay; that after the refinancing of said Hobbs mortgage he was advised by said Cone that he was ready to reconvey the property to said Minnie A. Rausch upon the payments of the amounts due him, and that he endeavored to get such settlement, and in the month of February, 1918, prepared such a deed to be executed by Cone and wife, but said deed was never in fact executed, for the reason that complainants were never ready to settle with Cone; that finally the title to the property was vested in Cone by a quitclaim deed executed by complainants on April 1, 1918; that said quitclaim deed was prepared by him upon instructions received by him from the complainants and defendant Cone, for the purpose of vesting the absolute title to the property in Cone. He denies that any deed was ever left with him in escrow for the complainants, or that he ever held any deed for either of the complainants, except the unexecuted form of deed before mentioned; admits the settlement of the suit in which the supersedeas bond was given; alleges ignorance of other charges in the bill, and a general denial of any other matter or thing not otherwise fully answered.

The defendant Cone in his answer admits the title of the complainant Minnie A. Rausch, subject to the Hobbs mortgage as set out in the bill; admits that the mortgage had become in default and foreclosure proceedings commenced and pending; admits negotiations between himself and complainants which resulted in the use of the mortgage held by complainant Mrs. Rausch for $4,000 to settle pro tanto the Hobbs mortgage; admits the execution of the agreement of October 30, 1917, setting forth the agreement of the parties thereto; admits that pursuant to said agreement he was able to handle said foreclosure suit, so as to effect a settlement by paying several thousand dollars and arranging a renewal by defendant Cone giving a new mortgage for the difference; admits the conveyance by complainants to Cone in order that the settlement might be effected, the defendant Cone to reconvey "upon the payment of said mortgage, and upon certain other payments and compliance with certain conditions under which the said property was deeded" to him by complainants. The defendant admits, further, that the deed from complainants to him was dated December 17, 1917, and that the mortgage was renewed substantially as alleged in the bill. The answer then alleges that the mortgage being foreclosed was an obligation of the defendant, and he was a party to said foreclosure suit, and was under the necessity of protecting himself against same, and to that end handled the same between the complainants, who were primarily liable for said mortgage debt, and himself; that a decree had been actually entered in said foreclosure suit, which was practically for $13,000, and was actually paid upon said decree the equivalent of the mortgage turned over to him by complainants.

The answer further states that the complainant in the foreclosure suit refused to accept a new mortgage from the said Rausches and demanded that this defendant execute the new mortgage and continue his liability for said debt; that the new mortgage was given for $8,600. He admits he put a new cement floor in said building, and alleges other expenditures which are material in the matter of accounting, but not

material in settling the equities. He denies that he ever executed a reconveyance of the property to the complainants and left with defendant Mabry as alleged in the bill, but alleges that complainants, in contemplation of removing from Tampa, stated that they were unable to carry the property and pay the debts incumbering same, and requested him to relieve them from further obligations therefor, and himself retain the title under the conveyance theretofore executed to him; that he took legal advice as to whether such an arrangement would be binding, and was advised that it would not, and that an additional deed would be necessary; that thereupon the complainants executed the quitclaim deed for the purpose of vesting the full legal title in him; and that since the date of said quitclaim deed he has claimed and held said property as his own. The defendant Cone denies that he ever executed an agreement dated April 1, 1918, and attached to the bill. Then the general denial.

Upon March 23, 1922, the hearing of testimony was commenced, and concluded on March 24, 1922, when counsel for the respective parties argued and submitted said cause to the court. The issues under the pleading in so far as Mabry is affected are: (1) Did Cone and wife execute a deed reconveying the property to Minnie A. Rausch and place it in his custody for delivery to the complainants? and (2) did the complainants execute the quitclaim deed of April 1, 1918, for the purpose of further securing the defendant Cone in his liability on the supersedeas bond, and deliver the same to Mabry, to be redelivered to them upon the cessation of any liability on said bond?

There is only one witness, the husband of Minnie A. Rausch and cocomplainant, who testifies that any such deed reconveying said property was ever in existence. As opposed to this testimony, there is the testimony of the defendants Mabry and Cone, and as a part of Mabry's testimony is produced the form of deed which he had prepared to carry out the agreement executed October 30, 1917, between the complainants and the defendant Cone. The witness testifying to the existence of the deed in Mabry's office could not give the time with any definiteness, nor was his reason for not taking the deed, then, as he claims, offered him, of much cogency. It seems to me that the most natural action on his part, had the deed been offered him, was to take it. The refinancing of the Hobbs mortgage was then an accomplished fact, according to his own contention. Had he been then dissatisfied with the amount for which the new mortgage was given, it seems to me he would have made his dissatisfaction known, and to Mabry. Yet according to his testimony he left it with Mabry, because he had every confidence that it was in safe hands, etc., and stating that he did not think a sufficient amount had been paid on the decree. This last seems to have been as afterthought, not expressed to Mabry, and so far as the evidence is concerned never expressed to defendant Cone. Then a conversion with Mabry was had just previous to complainant C. E. Rausch going to Chicago on account of the death of his brother, and nothing said about dissatisfaction with the amount of the new mortgage; then the letter of March 6, 1918, to Mrs. Rausch, of which the husband admits he was cognizant, and the utter silence in regard thereto. Subsequently

the evidence shows Rausch importuning Cone to go on a supersedeas bond, and Cone's unwillingness to incur such liability, and still no dissatisfaction expressed.

Nor does it impress me as reasonable that one would leave a deed to a valuable piece of property in the hands of any one unrecorded, when a third party held the record title and was in possession of same. Taking into consideration the surrounding circumstances, I am constrained to find that no such deed as is alleged in the bill of complaint was ever delivered to defendant Mabry, for delivery to the complainants, or either of them. I find the first issue heretofore stated against the complainants.

The second issue, so far as defendant Mabry is concerned, is: Did the complainants execute the quitclaim deed for the purpose of further securing Cone against liability on the supersedeas bond, and was this deed for that purpose delivered to Mabry, to be held by him in escrow or in trust for the complainants? The discussion of the first part of this issue concerns also the defendant Cone.

The testimony shows that the complainants were then contemplating the removal of their residence from Tampa to Charleston, S. C.; that the house which they had in Hyde Park was then advertised for sale under foreclosure proceedings, to take place April 1, 1918; that they were without means to protect this house from forced sale under the decree, and in which the complainants believed they had, and it afterwards appeared did have, an equity of several hundred dollars, and had been importuning Cone to become surety on their supersedeas bond, to enable them to stay the proceedings while the case was pending in the Supreme Court of Florida; that Cone was unwilling to incur this liability, although the title to the Hyde Park property was to be conveyed to him to secure him from loss on said bond. Up to this point there is little dispute between complainants and Cone.

The complainants insist that, Cone being unwilling to incur this liability on the security of the Hyde Park property alone, therefore the quitclaim deed to the other property of April 1, 1918, was executed. Cone, on the other hand, contends that he refused to go on the supersedeas bond until and unless the complainants vested the absolute title to the property in dispute in him, and that the quitclaim deed was executed for that purpose. Cone and Mabry both testify to this, and that the quitclaim deed was executed and delivered to Cone in Mabry's office on the day of its execution, and then the supersedeas bond was executed or delivered to the complainants. Mabry testifies to the conversation between himself and the complainants preceding the preparation and execution of the quitclaim deed, detailing that the parties thought the deed theretofore executed by the complainants to Cone, to enable him to refinance the Hobbs mortgage, was sufficient to vest the title; whereas he explained to them that that deed, being given under the agreement of October 30, 1917, did not have that effect, and therefore the quitclaim deed was necessary to carry out the intention of the parties, and he then, at the instance of the complainants, prepared it. This is denied by the complainants. A consideration of the agreement of October 30, 1917, convinces me that any careful lawyer would have

taken this view of the matter, where a client's interests were involved, and the explanation is reasonable.

It will be borne in mind that this latter transaction took place in the midst of the World War, when, as one of the witnesses says, there was no demand for property and few sales being made. It must also be borne in mind that Minnie A. Rausch was a married woman, and her assumption of the payment of the mortgage could only bind her separate property, and, in so far as the evidence shows, she had none, except the Bailey mortgage, already assigned for the purpose of having its proceeds applied to the reduction of the Hobbs mortgage and the Hyde Park property then advertised for sale. And Cone was bound by his mortgage to Hobbs covering this property. From the testimony it appears that Cone was unable to sell the past-due Bailey mortgage, with its accrued interest, at 10 per cent. discount as provided in the October agreement, and had borrowed money to make the payment on the Hobbs decree, in order to get the extension desired.

Under the circumstances, the assignment of the Bailey mortgage, executed on April 1, 1918, seems a perfectly natural proceeding, if Cone was to take the absolute title to the property, subject to the existing incumbrances. The letter of Mabry to Mrs. Rausch of March 6, 1918, bears out to my mind the contention of the defendants. If the contention of complainants, that all they had to do was to demand and receive the deed reconveying the property to Mrs. Rausch, is correct, then why the expression, "as soon as the matter can be closed out." The matter, according to the complainants' contention, had been closed out in December of 1917, and the new mortgage given. And yet, as noticed above, the complainants made no objection to the letter, nor asserted any such claim as made in their bill.

The complainants produced at the hearing a paper dated April 1, 1918, signed by themselves, but unsigned by Cone. Cone swears he never executed such a paper, and Mabry swears he prepared it in his office at the instance of complainants, and they executed it in his office, after Cone had gone, and after the delivery of the quitclaim deed to Cone. The paper does not purport to have been executed in duplicate, and the complainants are unable to explain why this particular paper appears unexecuted by Cone, except to suggest that he signed the copy. The peculiar thing about the paper to me is that it has reference to the Hyde Park place, and the reconveyance of same to complainants, purports to secure payment of the sum of $172, the amount of the first note under the new mortgage on the property in dispute, and is silent as to the quitclaim deed that day executed by the complainants to Cone. Certainly the transaction was then fresh in the minds of the complainants, and if this quitclaim deed was given as a further security against Cone's liability on the supersedeas bond, they would scarcely have overlooked so important a matter as the reconveyance of a valuable property, when having the contract reduced to writing in regard to the Hyde Park property; especially is it·so when they do refer to an interest note due upon the mortgage on that very property. It, however, appears that the matter of the Hyde Park property and Cone's liability on the supersedeas bond was entirely settled shortly after complainants

had removed from Tampa, in August or September of 1918, without any payment to Cone of the $172 interest note.

The complainants, to corroborate their contention, produced a registered letter to Mrs. Rausch, purporting to be signed by Cone, dated July 24, 1918; and demanding the repayment of two interest notes of $172 each. This letter is typewritten, except the signature. Cone would not positively deny the signature—says it looks like his, but points out certain differences, and says he never wrote any such letter, although it is on his stationery.

There is a likeness between this signature and certain admitted signatures in evidence; yet I cannot say, from a comparison of same, that it is the signature of defendant Cone. The complainants also produce a canceled check to Cone, dated May 8, 1918, for $7.60, which complainants claim was given in payment for paint purchased by Cone and used by Mr. Rausch in painting the building on the property subsequent to the date of the quitclaim deed. This is again met by the denial of Cone, and I am unable to say whose recollection is correct. I am therefore constrained to find the second issue in favor of defendant Mabry and against the complainants.

It seems to me the sole issue as to defendant Cone on this hearing is whether the quitclaim deed given him by the complainants was given to secure him against liability on the supersedeas bond, or whether it was given with the purpose to vest the title absolutely.

On its face it is a deed absolute, and the rule of law, as I understand it, is that one claiming a deed absolute upon its face is given as security has the burden of proof. Therefore the complainants in this case have the burden of proof resting upon them to establish to the satisfaction of the court that this quitclaim deed, although absolute upon its face, is really a security, which under the Florida law does not vest title.

I have discussed the evidence produced by the parties fully bearing upon this question in discussing the second issue as to defendant Mabry, and a rediscussion would serve no useful purpose. I find that the complainants have failed to sustain the burden cast upon them by the law, and that the equities are with the defendant Cone.

A decree will be entered, dismissing the bill of complaint against all the defendants, at the cost of the complainants in this suit.